UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDUARDO JACOBS,

        Plaintiff,        CASE NO. 15-10516
                                HON. DENISE PAGE HOOD
v.

RAYMON ALAM, *et al.*,

        Defendants.
_____/

# ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF ECONOMIC DAMAGES AND DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY [#179]

**I.    BACKGROUND**

Defendants Raymon Alam, David Weinman, and Damon Kimbrough ("Defendants") have filed a Motion to exclude evidence of economic damages. [ECF No. 179]

This case involves the events that occurred between Defendants and Plaintiff Eduardo Jacobs ("Plaintiff") during the raid at his residence located at 5837 Christiancy Street, Detroit, MI on January 3, 2014. The parties dispute many of the events leading up to Plaintiff's injury. However, it is undisputed that Plaintiff was shot at least one time from one of Defendants' bullets.

1

Plaintiff alleges that the bullet wound he sustained resulted in his permanent inability to work, which caused a series of economic losses related to his rental properties, "Mexicantown Properties, LLC." Plaintiff further contends that his absence from work allowed employees of his company to loot his business assets. Plaintiff also alleges that his permanent disability forced several of his properties into tax foreclosure. Defendants claim Plaintiff has violated Federal Rule of Civil Procedure 37 and that Plaintiff's expert witnesses, Dr. Nitin V. Paranjpe and Mr. Guy A. Hostetler should be excluded.

II. ANALYSIS

A. **Rule 37**

1. *Legal Standard*

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," Rule 37 of the Federal Rules of Civil Procedure explains that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1); *see also Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 396 (6th Cir.2010).

The Rule 37 sanction "is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.' "*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357, 370 (6th Cir.2010)

(quoting *Vance ex rel Hammons v. United States*, 182 F.3d 920 (6th Cir.1999)). The burden is on the potentially sanctioned party to prove the failure was harmless and avoid automatic sanctions. *See Everlight Electronics, Co. v. Nichia Corp.*, No. 12–CV–11758, 2014 WL 3925276, at *5 (E.D.Mich. Aug.12, 2014) (citing *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir.2010)); *see also El Camino Res., Ltd. v. Huntington Nat. Bank*, No. 1:07–CV–598, 2009 WL 1228680, at *2 (W.D.Mich. Apr.30, 2009) (citing *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir.2003)).

"[D]espite the mandatory language of the rule," this Court notes that "the appellate courts continue to insist that [exclusion pursuant to Rule 37(c)(1) ] falls within the sound discretion of the trial court." *El Camino Res., Ltd.*, 2009 WL 1228680, at *2 (citing *Roberts ex rel. Johnson*, 325 F.3d at 782); *accord Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir.2006) (stating that preclusion remains discretionary, even where nondisclosing party has not met its burden to show that violation was justified or harmless); *see also Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir.2000) ("[Trial] courts have broad discretion to exclude untimely disclosed expert-witness testimony."); *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1012 (7th Cir.2004) ("[trial] courts enjoy broad discretion in controlling discovery."); *S. States Rack & Fixture, Inc. v. Sherwin— Williams Co.*, 318 F.3d 592, 597 (4th Cir.2003) (stating trial courts have "broad

discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis"); *Laplace—Bayard v. Batlle*, 295 F.3d 157, 162 (1st Cir.2002) ("[Trial] courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations."); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir.2002) ("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the [trial] court.").

In determining whether nondisclosure is harmless, courts look at several factors, but the principal factor is whether the opponent will be prejudiced or surprised. *See, e.g.*, *El Camino Res., Ltd.*, 2009 WL 1228680, at *2 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir.2003)). The Advisory Committee Comments to Rule 37 note that "[l]imiting the automatic sanction to violations without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations[.]" Fed.R.Civ.P. 37 Advisory Committee Notes, 1993 Amends. (emphasis added).

2. *Application*

Defendants argue that Plaintiff failed to respond to their discovery requests and the Court's Order compelling the disclosure of certain information. In forming their argument, Defendants allege that Plaintiff took several actions—and in some cases no action—to circumvent the discovery process. Defendants allege

that Plaintiff has been receiving social security disability checks since 2011. Defendants highlight that it is unclear how Plaintiff can receive social security disability benefits, despite operating a "highly-profitable business." [ECF No. 179, Pg.ID 5884] Plaintiff did not address this claim in his Response.

In addition to Plaintiff's injuries stemming from the January 2014 shooting, Plaintiff also sustained injuries in two serious car accidents—one in 2009 and the other in April 2014. To determine each incident's effect on Plaintiff, Defendants asked Plaintiff to disclose which of his injuries were attributable to each event.

Defendants allege Plaintiff failed to answer their requests, so they moved to compel Plaintiff's answers. Although Plaintiff submitted an interrogatory explaining which injuries were caused by the shooting and not attributable to either car accident, [ECF No. 183-5, Pg.ID 6161] Defendants claim the interrogatory was insufficient because Plaintiff failed to produce specific medical records as requested. Defendants argue that there is no way of knowing whether Plaintiff's injuries came from his car accidents or bullet wound. Defendants assert that if Plaintiff did not have any medical records to support his claims, he needed to respond that "'no' medical records supported his claims," and acknowledge that fact.

Defendants also allege that Plaintiff failed to produce his personal and business tax returns for the relevant time periods. Plaintiff responds that he

submitted a request to the IRS for all of his relevant personal and business tax returns. Through his request, Plaintiff realized that he did not file personal or business taxes during the relevant years and therefore, did not have any tax returns to produce.

Defendants further allege that Plaintiff neglected to produce his business bank account records, and other relevant business records. Plaintiff states that he produced 395 pages of bank statements from JP Morgan Chase Bank and Bank of America from 2013 to 2016.

Defendants also claim that Plaintiff failed to provide the names of the individuals who allegedly stole from Mexicantown Properties, while Plaintiff was absent from the property due to injury. Plaintiff correctly asserts that the Court's Order on December 16, 2016 [ECF No. 92] acknowledged that Plaintiff did not know the identity of the individuals who looted his business. Plaintiff's acknowledgment that he has an ongoing duty to report any new information illustrates his continuing compliance with this issue.

Defendants use *Razzoli v. Jersey City Police Dep't* to support their argument that failing to comply with discovery requests justifies excluding evidence concerning that topic of discovery. No. 16-5545, 2019 U.S. Dist. LEXIS 108812 (D.N.J. Apr. 26, 2019) (unpublished). But the Court finds the events in *Razzoli* sufficiently distinguishable from the instant case. In *Razzoli*, Plaintiff repeatedly

failed to attend scheduling conferences and other meetings associated with litigation. *Id.* at 4. Although the plaintiff attempted to justify each absence with a medical issue or physical ailment, the plaintiff never provided the court with any documentation. *Id.* The plaintiff also provided illegitimate excuses for failing to comply with discovery. *Id.* at 5 (explaining that the plaintiff alleged he could not afford to pay for the reproduction of documents that were in his estranged wife's possession).

In the instant case, Plaintiff has either complied with court orders and discovery requests or provided reasonable reasons for not doing so. For example, Defendants argue that Plaintiff failed to comply with the Court's instructions by not filing a declaration stating that he was unable to obtain certain documents. Plaintiff states that he thought it was unnecessary to file a declaration confirming the absence of a record when the court order specified that Plaintiff would have to request the sought-after records. Plaintiff thought that complying with the Court's first mandate would satisfy or negate the second instruction. The Court can see both side's perspective. Although Plaintiff definitively confirming some records did not exist or could not be located would have provided Defendants with some peace of mind, Plaintiff's actions were not blatantly outrageous, do not appear intentional, and are ultimately harmless.

Defendants' most compelling argument is that Plaintiff did not provide specific medical documents to support the claims he made in his interrogatory response. [ECF No. 183-5, Pg.ID 6161] Plaintiff's failure to provide specific medical records highlights a potential weakness in his argument, which is an issue for Defendants to point out at trial. However, Plaintiff's failure to specify medical records does not provide a sufficient reason to exclude evidence of all economic damages. The Court does not think Plaintiff's actions amount to a violation of Rule 37 and DENIES Defendant's request to exclude evidence of economic damages based on a Rule 37 violation.

## B. Expert Testimony

Alternatively, Defendants seek to exclude evidence of economic damages because of Plaintiff's alleged untimely disclosure and deficiencies with Plaintiff's expert witnesses, Dr. Nitin V. Paranjpe and Mr. Guy A. Hostetler.

### 1. *Legal Standard*

Federal Rule of Evidence 702 provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon scientific facts or data; (c) the testimony is the product of reliable principles and methods; and (d)

> the expert has reliably applied the principles and methods
> to the facts of the case.

Rule 702 charges trial judges with the task of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The gatekeeping role "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is ... valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. This role applies to all expert testimony, not only to "scientific" expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). As the advisory committee notes to Rule 702 explain, expert testimony is admissible provided that "the principles and methods [used by the expert] are reliable and applied reliably to the facts of the case." FRE 702 Advisory Committee notes (2000 amendments).

The Sixth Circuit has explained the district court's gatekeeping responsibility under *Daubert* as follows:

> In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that scientific evidence proffered by an expert must be "relevant to the task at hand" and must rest "on a reliable foundation." The Supreme Court subsequently affirmed that *Daubert*'s principles apply more generally to all expert testimony admissible under Rule 702 in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The maxims set forth in *Daubert* and *Kumho Tire* have since been incorporated in Rule 702 . . .

* * *

> In essence, Daubert and its progeny have placed the district courts in the role of "gatekeeper," charging them with evaluating the relevance and reliability of proffered expert testimony with heightened care.

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294-295 (6th Cir. 2007) This "gatekeeping responsibility" includes an obligation to "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 714-15 (8th Cir. 2001) (quoting *Kumho*, 526 U.S. at 141).

The "gatekeeping" role does not always necessitate a pretrial hearing. *See Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999). On the contrary, the Sixth Circuit has repeatedly emphasized that a district court "is not required to hold an actual hearing to comply with *Daubert*," and that the decision about whether to hold such a hearing falls firmly within the district court's discretion. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001) (citing *Greenwell*, 184 F.3d at 498 and *Kumho*, 526 U.S. at 152). Where a district court opts not to hold a *Daubert* hearing, the court may satisfy its gatekeeping role by "keep[ing] watch over the proceedings, and, with the aid of objections from [counsel], eliminat[ing] methodologically unsound or irrelevant expert testimony." *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 F. App'x 479, 484 (6th Cir. 2002).

Whether deciding the issue on the parties' written submissions or after holding an evidentiary hearing, a district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "The trial judge must determine at the outset. . .whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. "One key consideration is 'whether the reasoning or methodology underlying the testimony is scientifically valid.' The inquiry is 'a flexible one,' and 'the focus. . .must be solely on principles and methodology, not on the conclusions they generate.'" *Newell Rubbermaid, Inc. v. Raymond Corp*, 676 F.3d 521, 527 (6th Cir. 2012) (quoting *Daubert* at 592-93, and 594-95).

In *Daubert*, the Supreme Court set out four factors the court may consider when assessing the reliability of an expert's methodology, including: (1) whether the theory is based on scientific or other specialized knowledge that has been or can be tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error and the existence of standards controlling the theory's operation; and (4) the extent to which the theory is generally accepted in the relevant community. *Id*. at 593-94. Although *Daubert* identified a number of potential considerations for determining reliability, the district court has "wide

latitude" in "deciding how to test an expert's reliability," and must be afforded "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.,* 526 U.S. at 137. The district court need not follow one particular method for deciding how to test an expert's reliability, nor does this decision even have to take place at a preliminary hearing. *Id.; see also Greenwell*, 184 F.3d at 498 ("[T]he trial court is not required to hold an actual hearing to comply with *Daubert*…").

"Once initial expert qualifications and usefulness to the jury are established, however, a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, *Kumho Tire*, and related precedents." *Id*. at 715.

2. *Application*

Defendants assert that Federal Rule of Evidence 702 requires the exclusion of Plaintiff's economic damages experts. Defendants claim that Plaintiff failed to disclose Dr. Paranjpe and Mr. Hostetler in a timely manner. Defendants also argue that Plaintiff now asserts a new theory of damages, and that Plaintiff's experts based their testimony on unsupported evidence.

Although Dr. Paranjpe and Mr. Hostetler were disclosed after the close of discovery, their initial disclosure in April 2019 did comply with Rule 26

(a)(2)(D)(i). The experts were disclosed more than 90 days before the trial was scheduled to begin in October 2019 and the disclosure did not violate a preexisting court order or stipulation. However, Plaintiff did violate Rule 26 by not providing the expert witness reports at the time of disclosure.

Defendants assert that Plaintiff did not submit the reports until July 2019. At that time, trial was set to begin on October 8, 2019. Since Defendants did not specify what date they received the expert reports, the Court cannot definitively determine whether the reports were disclosed in a timely manner. The Court also finds that Defendants' cited cases are distinguishable from the instant case. *Good v. Biolife Plasma Services, L.P.* differs because it involved the untimely disclosure of expert witnesses and does not mention expert reports. No. 18-11260, 2019 U.S. Dist. LEXIS 119357, *9-10 (E.D. Mich. July 18, 2019) (unpublished). Here, Plaintiff disclosed the witnesses on time, but may have disclosed the reports in an untimely manner. The Court finds *Doe v. Livonia Public Schools* more persuasive. No. 13-11687, 2018 U.S. Dist. LEXIS 9493, *9 (E.D. Mich. Jan. 22, 2018) (unpublished). *Doe* emphasized that proper notice is an underlying rationale behind Rule 37. *Id.* Plaintiff filed the expert report in July 2019. Defendants did not request to depose the experts and did not raise the issue of disclosure until September 2019. The Court finds that Defendants had sufficient notice of the contents of Dr. Paranjpe and Mr. Hostetler's testimonies to prepare for trial.

Defendants argue that Plaintiff originally calculated his damages using his estimates that he earned approximately "$230,000-$300,000" per year before the January 2014 incident. However, after failing to provide documents supporting this claim, Defendants contend Plaintiff now attempts to reframe his damages request. Plaintiff now argues he is entitled to damages that a typical person in his profession, "property management or "construction," would make absent Plaintiff's injuries. The Court takes no issue with Plaintiff using whatever argument and evidence is available to him, within the confines of the Federal Rules of Evidence, to support his claims.

Defendants then argue that Plaintiff's experts base their opinions on unsupported facts. Federal Rule of Evidence 702 establishes broad criteria for expert witness qualifications. Both of Plaintiff's expert witnesses for economic damages have the requisite knowledge, training, and education to satisfy Rule 702. Next, the Court is not convinced that Plaintiff's expert opinions are based on unsupported facts or insufficient data.

Defendants first argue that Mr. Hostetler's opinion is based on an outdated medical examination from Dr. Lerner, a physician who has since lost his medical license and is a convicted felon. Although the Court does not dispute this assertion, Dr. Lerner did have a valid medical license at the time of the

examination. Any issue that Defendants have with Dr. Lerner's analysis can be raised during cross-examination or through a rebuttal witness.

Defendants also argue that Plaintiff's experts base their opinions on Plaintiff's personal remarks about his business and health. Plaintiff counters that Dr. Paranjpe also based his opinion on information from the Michigan Department of Labor, Market Information & Strategic Initiatives, and the Bureau of Labor Statistics. Defendants respond that Dr. Paranjpe was only able to use the Department of Labor data after Plaintiff self-reported his past work experience and wages. The Court finds that this dispute reflects the weight of the evidence and not its admissibility. Defendants will be able to respond at trial with rebuttal witnesses or other appropriate methods of impeachment.

Next, the Court agrees that Mr. Hostetler is not permitted to opine on whether Plaintiff is "totally disabled." Mr. Hostetler is not a medical expert and may not make assertions about Plaintiff's total inability to work. As a vocational expert, Mr. Hostetler is limited to opining on the types of jobs that Plaintiff may be able to perform based on his current physical capabilities. *See Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 787 (6th Cir. 2010) (explaining that the vocational expert's opinion was valid because it was limited to listing eligible job opportunities and was consistent with multiple physician reports). Mr. Hostetler's expert testimony can be informed by medical reports but must be limited to

potential jobs available to Plaintiff. The Court DENIES Defendants' Motion to exclude Plaintiff's expert witnesses Dr. Paranjpe and Mr. Hostetler.

**C. Bifurcation**

Alternatively, Defendant filed a motion to bifurcate liability and damages. Defendant argues bifurcation will save judicial time and resources because if liability is not proven, there will be no need for the presentation of damages. Plaintiff counters that the potential for judicial economy is minuscule.

A district court may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P Rule 42(b); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). The decision to bifurcate a trial is "within the sound discretion of the court." *Yung v. Raymark Indus. Inc.*, 789 F.2d 397, 400 (6th Cir.1986). "The party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate trials." *K.W. Muth Co., Inc. v. Bing–Lear Mfg. Group, L.L.C.*, No. 01–cv–71925, 2002 WL 1879943, at *3 (E.D. Mich. Jul 16, 2002). Courts have indicated that bifurcation "should be used sparingly." *Kelley v. Steel Transp., Inc.*, No. 09-CV-14318, 2011 WL 1690066, at *4 (E.D. Mich. May 4, 2011).

The Court will not bifurcate this matter. Defendants note that bifurcation would allow the parties to revisit any legal issues regarding damages at a later date.

Although this is true, it is unwarranted in this case. While bifurcation could shorten the trial by excluding testimony regarding damages, the "saved" time would be for naught should the damages phase become necessary. Bifurcation requires a certain degree of duplication of efforts by the parties, counsel, and the Court. In the event the damages phase becomes necessary, there would have to be another round of opening statements, closing arguments, and jury instructions. *Id.* at *5. This trial does not involve complex issues requiring bifurcation.

## III.  CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Exclude Evidence of Economic Damages (#179) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Exclude Expert Testimony of Dr. Paranjpe and Mr. Hostetler (#179) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Bifurcate the trial into two phases (#179) is DENIED.

DATED:  November 13, 2019

s/Denise Page Hood  
DENISE PAGE HOOD  
Chief Judge