## Facts and Discussion

1. <u>**The Court did not Court abuse its discretion in denying Plaintiff's request to declare as unavailable Javier Vargas Jr., and prohibiting Plaintiff from reading his prior testimony into the record.**</u>

As with all arguments raised in Plaintiff's Motion for New Trial, this question was already resolved during the course of the trial in this matter. Javier Vargas Jr., was an individual who was present inside the home located at 5836 Christiancy Street, on the night of January 3, 2014, when the shooting event underlying this action transpired. He was identified as a potential fact witness in the Initial Disclosures, Witness Lists, and as a "Will Call" witness in Plaintiff's portion of the Joint Final Pre-Trial Order and a "May Call" witness in Defendant's portion of the Joint Final Pre-Trial Order. During Plaintiff's case-in-chief, Plaintiff called several witnesses including Defendants, Damon Kimbrough and Raymon Alam. Although Plaintiff represented that he was going to be calling both, Mr. Vargas Jr. and Michelle Dotson, who was also present inside the home, as fact witnesses, Plaintiff made **no** effort to serve or locate either until **after** Plaintiff had presented his case-in-chief and **after** Defendant's presented their case-in-chief.

A. <u>**Javier Vargas was not "unavailable" under FRE 804(a)(5)**</u>.

Under Rule 804(a), a witness is unavailable when the prosecution is "unable to procure [her] attendance ... by process or other reasonable means." Fed.R.Evid. 804(a)(5). In order for a witness to be "unavailable" for

constitutional purposes, the proponent of the evidence must have undertaken "'good faith efforts'" to procure the witness's attendance. The lengths to which the proponent must go to produce a witness ... is a question of reasonableness. *Ohio v. Roberts,* 448 US 56, 74–75 (1980). The ultimate question is whether the witness is unavailable **despite good-faith efforts <u>undertaken prior to trial</u> to locate and present that witness**." *Jackson v. Stovall*, 2010 WL 1754446, at *13 (E.D. Mich. Apr. 12, 2010), *report and recommendation adopted,* 2010 WL 1754445 (E.D. Mich. Apr. 29, 2010) [<u>**strong**</u> **emphasis added**] (citations omitted) [Exhibit "B"].

Stated another way, "[w]here it is alleged that the declarant is unavailable pursuant to Rule 804(a)(5) because he is absent from the hearing in which the hearsay testimony is offered, the proponent of the statement must demonstrate that: (1) the declarant is "absent from the hearing and (2) the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." *Williams v. United Dairy Farmers*, 188 F.R.D. 266, 272 (S.D. Ohio 1999). Thus, the mere absence of the declarant from the hearing, alone, does not establish unavailability. *Id.*, citing Fed.R.Evid. 804(a)(5) Advisory Committee Notes. The proponent must also establish that reasonable efforts were undertaken to secure the declarant's attendance at the hearing. See *Id.* Reasonable efforts include service of a subpoena on the declarant to testify at the hearing, attempts to depose the declarant, or some other showing of a good faith effort to secure the

declarant's attendance, such as witnesses explaining why the declarant is unavailable to testify. See Fed.R.Evid. 804(a)(5) Advisory Committee Notes (rule designed primarily to require that an attempt be made to depose a witness, as well as to seek his attendance, as a precondition to the witness being deemed unavailable).

This lawsuit was filed on February 13, 2015, and trial began on November 12, 2019. In other words, over a period of 4 years and 9 months, Plaintiff made **no attempt** to locate, depose, or subpoena Javier Vargas Jr., who was identified as a potential fact witness in the Initial Disclosures, Witness Lists, and as a "Will Call" witness in Plaintiff's portion of the Joint Final Pre-Trial Order. What's more, although Plaintiff represented that he was going to be calling both, Mr. Vargas Jr. and Michelle Dotson, who was also present inside the home, as fact witnesses, Plaintiff made **no** effort to serve or locate either until **after** Plaintiff had presented his case-in-chief and **after** Defendant's presented their case-in-chief.

For these reasons, Plaintiff has made no showing that Javier Vargas Jr. was "unavailable" for purposes of Rule 804(a)(5) and therefore, this Court's ruling was proper.

B. **Vargas Jr.'s Testimony is not admissible under FRE 807**.

Plaintiff next contends that Mr. Vargas Jr.'s testimony should had been allowed under the residual hearsay exception. The residual hearsay exception was designed to be invoked rarely and only in exceptional circumstances. *Pozen Inc v Par Pharm,*

*Inc*, 696 F3d 1151, 1161 (Fed Cir 2012) [citations omitted]. Those rare, exceptional circumstances are not found here. Plaintiff's invocation of FRE 807 is also improper because the residual exception is not supposed to be a "catch all" that can be used to erode existing hearsay exceptions. See FRE 807 Advisory Committee Notes ("This necessity requirement will continue to serve to prevent the residual exception from being used as a device to erode the categorical exceptions"). As with the failure of Plaintiff to meet either prong required to show admissibility under FRE 804, Plaintiff's FRE 807 showing also fails to meet either subsection (a) or (b) of the rule. The rule provides in pertinent part: Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice. Under FRE 807(a)(3), Plaintiff  failed show that Mr. Vargas Jr.'s prior testimony during the criminal proceedings was "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." During his case-in-chief, Plaintiff introduced evidence on each of the points for which Plaintiff sought to have the testimony of Mr. Vargas Jr. read

4

to the jury. For example, Plaintiff, himself, testified to the events leading up to the shootout as well what occurred when he opened the door at the top of the basement stairs. Plaintiff also called two other witnesses who were also in the main floor when the shooting started, Deputy Raymon Alam and Officer Damon Kimbrough. Additionally, Michelle Dotson, who was present at the time shooting erupted and was also listed by Plaintiff as a "will call" witness on the Joint Final Pre-Trial Order, however Plaintiff elected not to have her subpoenaed or take any efforts for that matter to secure her testimony.  As Plaintiff presented eye witness testimony of 3 of the 5 people who were inside the room when the shooting transpired and because there was other evidence he could have, but elected not to elicit during his case-in-chief, Plaintiff has not met the first requirement under FRE 807(a). *Rush v Illinois Cent R Co*, 399 F3d 705, 720 (CA 6, 2005) [testimony not admissible under FRE 807 where other proofs on the material fact were properly presented at trial]. Similarly, where the evidence offered under FRE 807 is cumulative of other proofs, it is appropriately rejected. See *United States v Hughes*, 535 F3d 880, 882 (CA 8 2008) [citation omitted].

C. **Vargas Jr. was not a Proper Rebuttal Witness**.

As previously argued during Trial, Plaintiff argues again that Mr. Vargas Jr. was a proper rebuttal witness relative to the testimony of Sgt. Joe Abdella, who testified to unsolicited statements that Plaintiff made during an interview a few short

hours after the shooting event.  Inherently problematic in this argument is that while Mr. Vargas Jr. could have testified to what he witnessed and recalls about the shooting event, he was not present during Sgt. Abdella's interview of Plaintiff and can offer no testimony of what Plaintiff said to Sgt. Abdella, or what Sgt. Abdella understood those statements to mean.[1]  The same applies to the testimony of Sgt. Andrew Guntzviller and Lt. Lance Sullivan, who were also present during Sgt. Abdella's interview of Plaintiff.[2]

As addressed more fully in Defendant's Response to Plaintiff's Motion to declare Javier Vargas Jr. as unavailable, filed during the course of trial [Doc. No.: 251], courts throughout the United States have routinely rejected attempts to "back-door" testimony, that should have been submitted in Plaintiff's case-in-chief through the guise of rebuttal testimony:

> The party holding the affirmative of an issue must present all evidence concerning it before he closes his case. *People v. Harris,* 57 N.Y.2d 335, 345 (1982).

---

[1] As it is not addressed in Plaintiff's Motion, Defendant presumes that Plaintiff is abandoning his argument that Mr. Vargas Jr. was a proper rebuttal witness relative to the testimony of DAMON KIMBROUGH and RAYMON ALAM.

[2] Regarding Plaintiff's statement and objection to the testimony of Lt. Lance Sullivan and Sgt. Andrew Guntzviller, it should be noted, that both were identified on Defendant's Initial Disclosures, Witness List, and Joint Final Pre-Trial Order. Further, there were no documents authored or produced by these witnesses to be disclosed.

[R]ebutting evidence … means, not merely evidence which contradicts the witnesses on the opposite side and corroborates those of the party who began, but evidence in denial that some affirmative fact which the answering party has endeavored to prove… *Marshall v. Davies,* 78 N.Y. 414, 420 (1879).

[Plaintiff] had ample opportunity to adduce such proof during direct examination ... Accordingly, we conclude that the trial court properly refused to permit rebuttal testimony concerning a fact which merely served to bolster the appellant's case after the defendants had rested. *Kapinos v. Alvarado,* 143 A.D.2d 332, 333 (2nd Dept. 1988).

A party holding the affirmative of an issue is bound to present all the evidence on his side of the case before he closes his proof and may not add to it by the device of rebuttal evidence. He may not hold back some evidence and then submit it to bolster his case after defendant has rested, for rebuttal evidence is not contradictory or corroborating evidence of facts already presented... *Hutchinson v. Shaheen,* 55 A.D.2d 833, 834 (4th Dept. 1976) [citations omitted].

The Sixth Circuit in *Benedict v. United States*, 822 F.2d 1426, 1429 (6th Cir. 1987) explained that Plaintiff was under "no compulsion to present one particular theory of causation. Their burden was to prove [their theory] by a preponderance of the evidence. *Id*. (citation omitted). [T]heir choice of theories by which to prove causation, persuasive or not, was their own to make." When the government defended by introducing a theory that cast doubt on Plaintiff's, new evidence was injected into the case. Although the evidence was not "new" since the parties knew of its existence prior to trial, it was new for rebuttal purposes. "[E]vidence is new if, under all the facts and circumstances ... the evidence was not fairly and adequately presented to the trier of fact **before the defendant's case-in-chief**." *Id*. (**emphasis**

**added**) [citation omitted].   A rebuttal witness whose purpose is to contradict an expected and anticipated portion of the opposing party's case in chief can never be considered  a proper rebuttal witness;  a rebuttal witness must  respond  to  new opinions brought out in her opponent's case in chief. *United States v. 9.345 Acres of Land*, 2016 WL 5723665, at *10 (M.D. La. Sept. 30, 2016) [citation omitted] (Exhibit  "C").  This  reading  is  consistent  with  the  general  rule that rebuttal witnesses are proper to  the  extent,  and  only  to  the  extent,  that  they directly address and dispute matters raised for the first time by the opposing party's witnesses. *Melgar v. Zicam LLC*, 2015 WL 5255391, at *2 (E.D. Cal. Sept. 9, 2015) [citation omitted] (Exhibit "D").  In this  case,  the  testimony  of  Mr.  Vargas  Jr. consisted **entirely** of the events transpiring inside the home and has **nothing** to do with statements made by Plaintiff hours later. Plaintiff had his opportunity to present this evidence during his case-in-chief and elected to proceed without testimony from Mr. Vargas Jr. and Ms. Dotson. To be certain, Defendants' called during their case-in-chief, the following: 1) Sgt. Joseph Abdella; 2) Sgt. Andrew Guntziller; 3) Lt. Lance Sullivan; 4) Dr. Allyson Loynd; 5) Dr. Craig Lemmen; 6) Ms. Wendy Sanchez; and 7) Cpl. Rebecca Benton. **None of whom** provided **any** testimony regarding what transpired inside the home while Mr. Vargas Jr. and Ms. Dotson were present and as such, the testimony of Mr. Vargas Jr. and Ms. Dotson would have done **nothing** to rebut the testimony of **any** Defense witness. Accordingly, Mr.

Vargas Jr. was not a proper rebuttal witnesses and his testimony, even if otherwise allowable during Plaintiff's case-in-chief, and Plaintiff's Motion to have Mr. Vargas Jr. declared as an unavailable rebuttal witness under the guise of rebuttal, was properly denied.

D. **There was no community of interest between the Prosecutor and Defendants**.

Even if this Court were to have found that Mr. Vargas Jr. was unavailable, his testimony was still inadmissible as neither defendant had an interest, opportunity, and similar motive to develop Mr. Vargas Jr.'s testimony in the criminal case as in the present lawsuit. If a declarant is unavailable, former testimony will not be excluded by the hearsay rule if the testimony: "(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross—, or redirect examination." Fed. R. Evid. 804(b)(1). Plaintiff has failed to show that the prosecutor in Plaintiff's criminal trial is a predecessor in interest to Defendants in this case and that the prosecution had a similar motive to develop Mr. Vargas Jr.'s testimony. Plaintiff was prosecuted by the Wayne County Prosecutor's Office and Defendants did not have any representatives on their behalf at the time of Plaintiff's criminal trial. *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1390 (8th Cir. 1986). Additionally, the prosecutor's objective

9

and motive in questioning Mr. Vargas Jr. was to prove that Plaintiff shot at the officers, not whether Defendants' use of force was objectively reasonable. *Id.* The prosecutor did not have a similar motive in questioning Mr. Vargas Jr. on the same matter that Defendants would question him if he were available. *Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179, 1187 (3rd Cir. 1978). The testimony was therefore appropriately not allowed under Fed. R. Evid. 804.

**2. <u>The Defendants did not improperly use Vargas Jr.'s absence to tell the jury what he would have testified to, and did not improperly tell the jury how a prosecutor renders a decision to prosecute.</u>**

Plaintiff's next argument twists the facts and events of this action to the point of dishonesty.

For instance, Plaintiff suggests that undersigned counsel "made up" the fact that Raymon Alam was shielding Mr. Vargas Jr. and Ms. Dotson when the shooting transpired.  While Mr. Vargas may not have testified specifically that Raymon Alam provided him cover, he never refuted this assertion.  Moreover, Plaintiff **completely ignores** that this "made up" fact was testified to by **both** Raymon Alam during the Preliminary Exam, during his deposition, at the criminal trial, and in the present trial; **as well as** Ms. Dotson in her recorded statement, during the Preliminary Examination, and at the criminal trial.

Next, Plaintiff suggests that it was somehow improper for undersigned counsel to tell the jury what physical documents the Prosecuting Attorney in the criminal proceedings had in her possession when she made the decision to bring the charges she did against Plaintiff. In so arguing, Plaintiff seems to forget that it was Officer Andrew Guntzviller and Lt. Lance Sullivan who testified that the recorded statements, written statements, photographs, diagrams, and reports, were produced as part of the "police jacket" that was provided to the Wayne County Prosecutor's Office.

Third, as Plaintiff's own Motion points out, at **no time** did undersigned counsel or an attorney for co-Defendants make any remark or comment on the substance of the out-of-court statements made by either, Javier Vargas Jr. or Michelle Dotson.

> Your Honor, I believe [Plaintiff's] counsel has forgotten the testimony of Officer Guntzviller and Officer Sullivan.  Officer Guntzviller is the one who took the recorded statements and he testified that those statements … along with the rest of the reports, were part of the package that [was] sent to the Wayne County Prosecutor's Office, which is exactly what I said in closing.  That these item – that these pieces of evidence were was sent to the Wayne County Prosecutor's Office.  And, Your Honor, I was very careful not to discuss the substance of those statements from Ms. Dotson and Mr. Vargas Jr., in accordance with this Court's prior orders. Doc. No.: 277, Pg. ID 7810; Doc. No.: 277-3, Pg. 43, L. 10-23.

That statements were made by Mr. Vargas Jr. and Ms. Dotson on the night of the shooting is undisputed fact. Through the entirety of the three (3) week trial leading to the present Motion, none of the attorneys for any Defendant, made any remarks

11

or comments about **what** Michelle Dotson or Javier Vargas Jr. stated in these recordings, rather, it was simply stated to the jury that these statements were in the possession of the Prosecution when it elected to move forward with the charges against Plaintiff; a fact that was specifically testified to by Sgt. Guntzviller and Lt. Sullivan.  In other words, in closing arguments, undersigned counsel relied on the **testimony**, **given during trial**, of Raymon Alam, Andrew Guntzviller, and Lance Sullivan.

In *United States v. Harper*, No. CR 2011-004, 2014 WL 3708071, at *10 (D.V.I. July 25, 2014), *aff'd sub nom* (citation omitted) [Exhibit "E"], the Defendant argued that the Government's statement, regarding the discovery of a new document, and asking to reopen the case in the presence of the jury was improper and prejudicial and thus merits a new trial. The Court then held

> The statement—**it if was improper**—should serve as the basis for a new trial only if the Court determines that the statement or misconduct prejudiced the defendant and likely changed the outcome of the trial.  Here, the Government's oral motion seeking to reopen the case stated only that the Government found a document related to Detective Herbert's testimony. **The request did not state the contents of the document, what the Government sought to prove by introducing it, or what effect, if any, the document would have on the government's case. The prosecutor made no representation as to whether the document supported or contradicted previous testimony. Accordingly, the jury received no information from the Government's statement other than the fact that a document existed. On this record, the Court cannot find that there is a "reasonable probability" that the outcome would have been different but for the statement. The Court finds that the request, which revealing nothing about the contents or purpose of the document, is an insufficient basis for**

**a finding of prejudice**. *Id*. (citations omitted).

**3.** **The Court properly prohibited Plaintiff from questioning Mary Gross regarding her discussions with counsel.**

    A. The Testimony sought is precluded by Attorney-Client Privilege and Work-Product Doctrine

Plaintiff's first argument relative to the assertion of Attorney Client privilege with respect to former Detroit Police Department Evidence Technician, Mary Gross, borders on nonsensical.

As a preliminary matter, contrary to the assertions made by Plaintiff, Plaintiff's counsel **was** permitted to inquire about the fact that Mary Gross had communicated with counsel for Defendant and co-Defendants, and his attorney, Mr. Yatooma, did so extensively.  Defendants did not object to Ms. Gross being asked if she had been in contact with undersigned counsel and counsel for co-Defendants.  Rather, the objections only arose when Ms. Gross began to be questioned about the **content** of those communications.

> "Counsel's communications with a former employee of the client corporation generally should be treated no differently from communications with any other third-party fact witness. Admittedly, **there are exceptions to this general rule**. As noted earlier, privileged communications which occur during the period of employment do not lose their protection when the employee leaves the client corporation. *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000) [**emphasis added**] (citation omitted). Moreover, there may be situations where the former employee retains a present connection or agency relationship with the client corporation, or **where the present-day communication concerns a confidential matter that was**

> **uniquely within the knowledge of the former employee when he worked for the client corporation, such that counsel's communications with this former employee must be cloaked with the privilege in order for meaningful fact-gathering to occur**.  In any event, the protection of the privilege extends only to communications and not to facts. *Id*. (citations omitted).

The scope of privilege in this instance is properly analyzed under the framework established by *Upjohn* and discussed in *In re Allen,* 106 F.3d 582, 606 (4th Cir. 1997):

> [T]he Attorney General's Office employed [witness] during the time period in question and she possessed information relevant to [attorney's] investigation. [Attorney] interviewed [witness] at the direction of her client, in order to provide legal advice to her client. Moreover, [attorney] needed the information that [witness] could provide in order to develop her legal analysis for her client. Consequently, [attorney's] notes and summary of her interview with [witness] are protected.

The exception discussed in *Infosystems Inc.*, is precisely the circumstance that existed in this matter. Ms. Gross is a former employee of the Detroit Police Department and the information she testified to was uniquely her own and related to information obtained during the course and scope of her employment with the Detroit Police Department.  At trial, Defendants in no way obstructed Plaintiff's efforts to gather the facts about her investigation and she testified fully and thoroughly thereto.  Nor did Defendants object to testimony to the fact that there were communications between counsel for Defendants and Ms. Gross.  Rather, the

14

**only** information that was objected to was the **substance** of the communications between counsel for Defendants and Ms. Gross.

Similar to this case, in *Coleman v. City of New York*, 1999 WL 493388, at *2 (S.D.N.Y. July 8, 1999) [Exhibit "F"] the Court explained:

> What plaintiff's counsel has overlooked is that the Corporation Counsel's Office is the legal counsel for the City and City agencies like the DOI. As such, the Corporation Counsel's discussion with non-adverse City employees about their deposition in a case in which the City (or City agency) is a defendant is protected by the City's attorney-client and/or work-product privilege, regardless of whether the employee also asks for representation in connection with the deposition…
>
> While plaintiff's counsel was entitled to inquire whether the witness had spoken to Corporation Counsel about the action before the deposition, he cannot obtain the substance of the communications… *Id.* (citations omitted).

Plaintiff argues that this is not applicable in this instance because the City of Detroit had been dismissed as a party to this action.  However, as explained in Defendant's Motions in Limine, after being served, Officer Kimbrough requested to be represented by the City of Detroit Law Department and indemnified by the City of Detroit. Indemnity is akin to insurance.  In other words, the suit against Officer Kimbrough is, in essence, a suit against the City itself.  An analogous scenario would be where a motorist is sued following a motor-vehicle collision.  There is no question that the communications between an attorney hired by the motorist's insurer to represent him or her, and a claims adjuster or employee of the insurance company,

would be privileged.  There is no difference here.  Regardless of whether the City of Detroit was still a party at the time of the communications between counsel and Ms. Gross, attorney-client privilege and the work-product doctrine apply just the same.

## 4. <u>The Court properly precluded Plaintiff from calling its rebuttal witness, Mr. William Cousins.</u>

As addressed in Defendants Motion in Limine seeking to preclude the testimony of Mr. William Cousins, based on the opinions rendered by Mr. Cousins in his Report, and an analysis of the education, training, and experience of Mr. Cousins, as seen through Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 US 579 (1993), Mr. Cousins was not qualified to testify in this action and was properly precluded from testifying.

"[T]he task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand is assigned to the district court." *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) [citation omitted]. To fulfil their obligation under *Daubert*, district courts must engage in a rigorous inquiry to determine whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address;

(2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  The party offering the expert has the burden of satisfying each

of these three elements by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

Rule 702 sets forth the necessary qualifications for any expert to testify in Federal Court:  a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.  The judge's role is to serve as "a gatekeeper" in determining whether the witness is qualified to serve as an expert. See *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) [citations omitted]. "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or defendant in a civil suit, or the government or the accused in a criminal case." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) [*en banc*].

Mr. Cousins was not qualified to testify as to whether Officer Kimbrough and Deputy Alam's discharge of their firearms constituted unreasonable and unacceptable force. The first requirement for the admissibility of Mr. Cousins' testimony is that he is qualified to testify competently regarding the matters he intends to address. *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1262

(S.D. Fla. 2012) [citation omitted].  While Mr. Cousins was a patrol officer and Secret Service Agent, he has no education or experience in customs enforcement and the unique challenges this particular arena of law enforcement encounters.

Much of Mr. Cousins' report addresses the attire that Officer Kimbrough and Deputy Alam were wearing on the night of January 3, 2014. While this testimony may have been relevant in Plaintiff's criminal trial, such testimony is wholly irrelevant to the inquiry of whether Officer Kimbrough and Deputy Alam reasonably under the circumstances. Mr. Cousins' report also addresses what Officer Knox and Deputy Weinman *could* have done to prevent the confrontation from ever occurring and "alternative actions and procedures." However, as the report states, with respect to notifying Plaintiff that officers were inside the home before he entered, "[e]ven though there may not be any official guidelines or procedures for this type of situation, it is my opinion that it would have been the most prudent action to take for the safety of the officers as well as for the other individuals inside the house." As this Court is very much aware, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Terry v. Ohio, supra,* 392 US 1, 20–22 (1968).

In sum, the report authored by Mr. Cousins is entirely silent on the issues of the reasonableness of the force used by Officer Kimbrough and Deputy Alam, as

18

well as the elements of the alleged fabrication of evidence, civil conspiracy, false arrest, and malicious prosecution claims.

The second requirement to determining the admissibility of a witness' opinion is reliability. *Feliciano*, 844 F. Supp. 2d at 1263 (citation omitted). "To evaluate the reliability of scientific expert opinion, courts consider, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique and (4) whether the technique is generally accepted in the scientific community." *Id*. at 1264. While this list is not exhaustive, Mr. Cousins has opined as to reasonableness of the force used by Officer Kimbrough and Deputy Alam, as well as the elements of the alleged fabrication of evidence, civil conspiracy, false arrest, and malicious prosecution claims. It is possibly not unreasonable for an expert to rely on certain reputable publications in the area of expertise to provide the crux of current and relevant data, especially when that witness is no longer active in the field of work. Mr. Cousins' report relies upon three (3) separate publications:

i.  Santa Clara Law Review article, "The Dangers of Warrant Execution in as [*sic*] Suspect's Home: Does Empirical Justification Exist for the Protective Sweep Doctrine?," by Illya Lichtenburg, Volume 54/Number 3, dated August 21, 2014;

ii. International Association of Chiefs of Police Concepts and Issues Paper, "Executing Search Warrants," IACP National Law Enforcement Policy Center, revised February 2006; and

iii. International Association of Chiefs of Police, "Executing Search Warrants – Model Policy," dated February 2005.

As it pertains to the matter at hand, a glaring issue is apparent from the very titles of these relied upon sources. The claims asserted in this action do not relate to the execution of a search warrant, but rather the alleged use of excessive force and the appurtenant conspiracy claims.  To be certain, the incident giving rise to this action did not occur until **hours** after the underlying search warrant had been executed. Hence, the sources upon which Mr. Cousins relies upon are immaterial to the claims asserted during trial.

Additionally, to satisfy the reliability requirement, an expert witness who relies primarily on experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. Fed. R. Evid. 702 advisory committee's note (2000 amends).  To fulfill its gatekeeping function under Rule 702, a district court must not simply "tak[e] the expert's word for it." *Id*.  "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Frazier*, 387 F.3d at 1261.  Because Mr. Cousins failed to consider basic factors relevant to the surviving claims in this action and because Mr. Cousins failed to identify any standards relative to any surviving claims in this action, Plaintiff

failed to meet his burden by a preponderance of the evidence as to the reliability of Mr. Cousins' opinions in this case.

The third requirement for admissibility of Mr. Cousins' opinions is that they will assist the trier of fact. Mr. Cousins has only reported on whether the Defendants *should* have been wearing fully marked police clothing and whether the Defendants *should* have notified Plaintiff of the presence of law enforcement inside the home when they watched him approach. Neither discussion has any relevance to the issues to be presented to the jury. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id*. at at 1262-63. "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) [citation omitted]. Mr. Cousins' opinions are not based on any education, training, or experience involving the issues in this action and will not assist the trier of fact to understand the evidence or determine any relevant issue of fact. As such, he should not be permitted to offer any opinions in this case or be permitted to testify at trial as to the actions of the Defendants.

In addition to the *Daubert* analysis above, Defendants also sought to strike Mr. Cousins as an expert because any testimony which is only general to use of force will cause unfair prejudice, confuse the issues, and will mislead the jury. *Frazier*,

21

387 F.3d at 1263. The Supreme Court recognized in *Daubert* the intricate role of Rule 403 in an expert testimony admissibility analysis when it noted that expert testimony could be "both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. Because the attire of the Defendants at the time of the underlying event, and whether or not the officers should have notified Plaintiff of the presence of Officer Kimbrough and Deputy Alam inside the home, any testimony by Mr. Cousins as written in his report, will cause unfair prejudice, confuse the issues, and will mislead the jury. For these reasons, even if the Court was to find Mr. Cousins' testimony to be admissible, his testimony should still be excluded and he should be stricken as an expert in this case on the basis of Rule 403.

For all of the reasons discussed above, this Court, in its gatekeeper role, ruled appropriately preventing Mr. Cousins from offering an opinion as to whether Defendants used excessive force, engaged in a conspiracy, falsely arrested Plaintiff, or participated in the alleged malicious prosecution. Not only are there sufficient grounds under *Daubert* and Rule 702 to find Mr. Cousins is not qualified to testify in this case, but any testimony would also cause unfair prejudice, confuse the issues, and will mislead the jury under Rule 403.

## 5. **There are not errors to warrant a new trial.**

When a party rests his argument for a new trial on the basis of cumulative error, he must show that the "combined effect of individually harmless errors was so

prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) [citations omitted]. As discussed in the sections above, Plaintiff has identified no error in the trial of this action which would warrant a new trial. Accordingly, there is no "cumulative effect," of error, and Plaintiff's motion for a new trial based upon a purported cumulative effect of errors should likewise denied. *Id*. (citations omitted). The Court must accept the jury's verdict, "if it is one which reasonably could have been reached." *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir.1967).

## <u>Conclusion</u>

Wherefore, Defendant, Damon Kimbrough, respectfully requests that this Honorable Court deny Plaintiff's Motion for New Trial, and further grant any other relief deemed just and appropriate.

Respectfully Submitted,
City of Detroit Law Department

Dated: January 9, 2020          /s/   <u>Gregory B. Paddison</u>
                                Gregory B. Paddison (P75963)
                                Attorney for Defendant