UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDUARDO JACOBS,

        Plaintiff,　　　　　　CASE NO. 15-10516
　　　　　　　　　　　　　　　　　HON. DENISE PAGE HOOD
v.

RAYMON ALAM, *et al.*,

        Defendants.
_____/

# ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL [#277]

### I.    BACKGROUND

A jury trial in this matter commenced on November 12, 2019, and it concluded on December 3, 2019. On December 3, 2019, the jury returned a verdict in favor of Defendants Raymon Alam, Dave Weinman, and Damon Kimbrough (collectively "Defendants") and against Plaintiff Eduardo Jacobs ("Jacobs") on all counts. On December 31, 2019, Jacobs, through his attorneys, filed the instant Motion for a New Trial. [ECF No. 277] On January 2, 2020, Jacobs filed a Motion to Substitute Counsel, [ECF No. 278] which the Court granted on January 10, 2020. [ECF No. 284] Jacobs is now proceeding *pro se*. Jacobs also filed a writ certiorari with the Court, [ECF No. 279] which the Court construes as some sort of

notice of appeal to the Sixth Circuit, which he has already filed with the Sixth Circuit.

## II. LEGAL ANALYSIS

### A. Motion for a New Trial

Rule 59 provides that a new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. Fed. R. Civ. P. 59(a)(1). Specific grounds for new trial have included: the verdict is against the weight of the evidence; the damages are excessive; for other reasons the trial was not fair; there were substantial errors in the admission or rejection of evidence; the giving or refusal of instructions were in error; and misconduct of counsel. *Clark v. Esser*, 907 F.Supp. 1069, 1073 (E.D. Mich. 1995); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir. 2012).

The grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing of abuse of discretion. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). The trial court has broad discretion in deciding a motion for a new trial to prevent a miscarriage of justice. *Clark*, 907 F.Supp. at 1073; *City of Cleveland*, 624 F.2d at 756; *Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244, 248 (6th Cir. 1991).

### B. Testimony of Javier Vargas, Jr.

Jacobs argues that the Court abused its discretion by denying his request to declare Javier Vargas, Jr. ("Vargas, Jr.") unavailable and prohibiting Jacobs from reading Vargas, Jr.'s prior testimony into the record. The Court determined that Jacobs did not meet Rule 804(a)(5)'s standard of unavailability. [ECF No. 271, Pg.ID 7781] The Court also found that Vargas, Jr. was not a proper rebuttal witness. [*Id.*]

To support his argument that the Court improperly ruled on the admissibility of Vargas, Jr.'s testimony, Jacobs cites *Moritz v. Woods*, 692 F. App'x 249, 251-52 (6th Cir. 2017). *Moritz* provides that:

> The test for whether a witness is "unavailable" as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it.

*Id.*

Jacobs then looks to *Eastham v. Johnson* to provide context for what constitutes a reasonable effort. 338 F. Supp. 1278, 1280 (E.D. Mich. 1972). In finding a detective's efforts reasonable, *Eastham* provides:

> He found her apartment vacant. He testified that he talked to people in the downstairs apartment and they informed him that Miss Wilkins had moved . . . Petitioner obtained an affidavit from Detective Martinez and attached it to his petition . . . Under the circumstances, the prosecution

3

      did in fact make a "good faith effort" to locate [the witness]. All the interviews conducted by Detective Martinez failed to disclose any solid hint as to Miss Wilkins' whereabouts.

*Id.*

Jacobs then analogizes his efforts to those of the detective's in *Eastham*. Jacobs indicates that he submitted the declaration of his retained private investigator, Mr. Paul Whiting. [ECF No. 277, Pg.ID 7814] Mr. Whiting was unable to locate Vargas, Jr. after using his last known address—5837 Christiancy St, Detroit, MI[1]— to search two internet databases. [*Id.*] At the Court's request, Jacobs asked Defendants for the address—4900 Tarnow St., Detroit, MI—where they served a person believed to be Vargas, Jr. with a subpoena to testify in the case. [*Id.* at 7815] Jacobs' counsel, Mr. Mohamed Nehme, went to both of Vargas, Jr.'s previous known addresses. [*Id.*] The resident at 4900 Tarnow St., was actually Javier Garcia, who had a different date of birth than Vargas, Jr., signed a declaration that he has never lived on Christancy St., and that he does not know Michelle Dotson.[2] [*Id.*] Garcia's declaration also mentioned that when he was contacted by Defendants' process server, he told them that he was not the Javier Vargas, Jr., that witnessed Jacobs' shooting. [*Id.*] After Mr. Nehme went to the Christiancy Street address, the homeowner there said that the house was vacant when she moved in a few years ago and that Vargas, Jr. did not live there. [*Id.* at

---

[1] 5837 Christiancy St, Detroit, MI is the location where all the major events leading up to the lawsuit occurred.
[2] Michelle Dotson was Vargas, Jr.'s girlfriend at the time of Jacobs' shooting and was also an eyewitness.

7816] Jacobs also signed a declaration confirming that Javier Garcia is not the eyewitness Javier Vargas, Jr. [*Id.* at 7815]

To declare Vargas, Jr. unavailable, the Court must find that Jacobs' efforts to find Vargas, Jr. were reasonable. *Lucas v. Chance*. 121 Fed. App'x 77, 80 (6th Cir. 2005). After reviewing the record and Jacobs' additional caselaw, the Court maintains that Jacobs' efforts did not meet the necessary standard to declare a witness unavailable. Although Jacobs' cases are instructive, the cases are distinguishable. The Court finds that (1) the Sixth Circuit's standard for unavailability in civil cases is more demanding than the cited criminal cases, and (2) the Court does not find Jacobs' actions "reasonable" and "diligent" as required by relevant caselaw. *Moritz*, 692 F. App'x at 251.

The Sixth Circuit discusses the meaning of unavailability in civil cases in *Chance*. 121 Fed. App'x at 80. Lucas explains that a party must be unable to procure a declarant's attendance "*by process* or other reasonable means." *Id.* (emphasis added). *Lucas* admonished the hearsay proponents for not attempting to subpoena the declarant prior to arguing that the declarant was unavailable. *Id.* Although Jacobs states that Defendants had Vargas, Jr. on their witness list and stated that they subpoenaed him, relying solely on Defendants' actions to produce a witness favorable to an opposing party is unreasonable, especially when Vargas, Jr. was identified as a potential fact witness in the Initial Disclosures, Witness

5

Lists, and as a "Will Call" witness in Plaintiff's section of the Joint Final Pre-Trial Order. [ECF No. 285-1, Pg.ID 8213]

The Court also finds that Jacobs' efforts differ from the detective's in *Moritz*, because Jacobs' efforts were not "diligent." *See* DILIGENT, Black's Law Dictionary (11th ed. 2019) (defining diligent as "persistent in doing something" or a "steady effort"). *Moritz* explains that the inquiry turns on "whether diligent good-faith efforts" were made. "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken *prior* to trial . . . ." *Jackson v. Stovall*, No. 208-CV-10094, 2010 WL 1754446, at *13 (E.D. Mich. Apr. 12, 2010), *report and recommendation adopted*, No. 08-CV-10094-DT, 2010 WL 1754445 (E.D. Mich. Apr. 29, 2010), *aff'd*, 467 F. App'x 440 (6th Cir. 2012) (quoting *Ohio v. Roberts*, 448 U.S. 56, 74 (1980)) (emphasis added).

Jacobs did not make any attempts to find Vargas, Jr. until after Defendants decided not to call him at trial. Jacobs listed Vargas, Jr. on his witness list on February 12, 2016. [ECF No. 40, Pg.ID 283] Even if Jacobs relied on Defendant's efforts to locate Vargas, Jr., he had over four years to depose him. *See 1337523 Ontario, Inc. v. Golden State Bancorp, Inc.*, 163 F. Supp. 2d 1111, 1120 (N.D. Cal. 2001) (explaining that the "fifth [804] category, however, requires that an attempt be made to depose a witness as well as to seek his attendance as a precondition to the witness being deemed unavailable").

6

Not only was Jacobs unable to show that Vargas, Jr. was unavailable under Rule 804(a)(5), but Jacobs failed to satisfy Rule 804(b)(1). Rule 804 states that even if a declarant is found unavailable, former testimony is not excluded from the hearsay rule unless the testimony "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross—, or redirect examination." Fed. R. Evid. 804(b)(1)(B). During the criminal trial, Defendants did not have any individuals present to represent their interests. Jacobs has not shown that Defendants' interests were represented during the Wayne County Prosecutor's Office's questioning of Vargas, Jr. in Jacobs' criminal trial. *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1390 (8th Cir. 1986).

Alternatively, Jacobs argues that Vargas, Jr.'s former testimony is admissible under Federal Rule of Evidence 807—the residual hearsay rule. Rule 807 should only be used in rare and exceptional circumstances. *Pozen Inc. v. Par Pharm, Inc.*, 696 F.3d 1151, 1161 (Fed. Cir. 2012). Rule 807 allows testimony that would otherwise be excluded if:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

7

Fed. R. Evid. 807. However, a party cannot use Rule 807 to avoid calling live, available witnesses. *United States v. Barlow*, 693 F.2d 954, 961 (6th Cir. 1982). *Barlow* recognized that a witness must first be found "unavailable" before a party may invoke Rule 807. *Id.*; *see also United States v. Hsia*, 87 F. Supp. 2d 10, 16 (D.D.C. 2000) ("For an out-of-court statement of a declarant to come in under Rule 807, the proponent of the testimony must demonstrate (1) that the declarant is unavailable, (2) that it has made reasonable efforts to make the declarant available for trial . . . .").

Jacobs also failed to comply with Rule 807's notice requirement. Rule 807(b) requires that "before the trial or hearing, the proponent give[] an adverse party reasonable notice of intent to offer the statement and its particulars." Fed. R. Evid. 807(b). As Defendants indicate, Jacobs did not provide any notice of his intent to introduce Vargas, Jr.'s prior testimony until after the trial began. *See, e.g.*, *United States v. Bachsian*, 679 F.3d 1131, 1142 (9th Cir. 2012) (holding that a party must comply with Rule 807(b) unless the requirement should be excused). The Court finds that Jacobs' has not met the requirements necessary to invoke Rule 807.

### C. "Empty-Chair Defense"

Jacobs argues that Vargas Jr.'s absence omitted several important facts that Defendants capitalized on to "make-up facts to bolster [their] case." [ECF No. 277,

Pg.ID 7822] Jacobs further asserts that the Court must determine from the "totality of the circumstances," including the substance of the comments, their frequency, their potential relevancy to the important issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the ultimate verdict, whether a party's arguments were inappropriate and influenced the jury. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d at 756.

Jacobs specifically argues that Vargas, Jr. testified that he told the officers that he saw Jacobs walk around the side of the house, which gave them notice that Jacobs would come through the back door. Jacobs also asserts that Vargas, Jr.'s testimony that he heard two gun shots, then heard someone shout "Detroit Police" supports Jacobs' theory that he was shot before the officers announced themselves. Jacobs also alleges that Vargas, Jr. never testified that Alam protected him during the shooting.

In response, Defendants assert that Vargas, Jr.'s testimony would not rebut the testimonies of Sergeant Abdella, Sergeant Guntzviller, or Lieutenant Sullivan, which were presented in Defendants' case-in-chief. Defendants argue that a rebuttal witness must respond to new information contained in an opponent's case-in-chief. *United States v. 9.345 Acres of Land*, 2016 WL 5723665, at *10 (M.D. La. Sept. 30, 2016); *see also Melgar v. Zicam* LLC, 2015 WL 5255391, at *2 (E.D. Cal. Sept. 9, 2015). Although *9.345 Acres* and *Melgar* are nonbinding, their

9

principles are consistent with the Sixth Circuit's reasoning in *Benedict v. United States*, which opines that "evidence is new if, under all the facts and circumstances, . . . the evidence was not fairly and adequately presented to the trier of fact before the defendant's case-in-chief." 822 F.2d 1426, 1429 (6th Cir. 1987).

Defendants argue that Vargas, Jr.'s testimony involves events that occurred inside the home and is irrelevant to Jacobs' statements made hours later while Jacobs was in custody. To support this assertion, Defendants indicate that their witnesses 1) Sergeant Abdella, 2) Sergeant Guntzviller, 3) Lieutenant Sullivan, 4) Dr. Loynd, 5) Dr. Lemmen, 6) Ms. Sanchez, and 7) Corporal Benton, did not provide testimony of what occurred inside the home in the presence of Vargas, Jr. or Ms. Dotson. Absent such testimony in their case-in-chief, Defendants argue that Vargas, Jr.'s testimony would not rebut any of their witnesses.

Defendants also assert that Vargas, Jr. cannot properly rebut the testimony of Kimbrough or Alam because both of those witnesses were called during Jacbos' case-in-chief. Defendants then argue that courts routinely admonish "back-door" attempts to label new evidence rebuttal evidence, when it should have been introduced during a plaintiff's case-in-chief. *See, e.g.*, *Life Plus Intern. v. Brown*, 317 F.3d 799, 804 (8th Cir. 2003) (opining that a party cannot "get admitted through the back door of rebuttal evidence that which the district court had correctly barred as being untimely disclosed at the front door").

10

Defendants further argue that they did not "make-up" facts in Vargas, Jr.'s absence. Although Vargas, Jr. may not have testified that Alam shielded him, he did not refute that assertion, and it is supported by Alam's testimony during the preliminary exam, his deposition, the criminal trial, the instant trial, and by Ms. Dotson's testimony at the preliminary exam and the criminal trial.

Jacobs also argues that Defendants improperly told the jury about the prosecutor's decision-making process in determining whether to press charges. Jacobs claims that Defendants' statements were problematic because there was no evidence admitted regarding what a prosecutor considers before bringing charges.

In response, Defendants argue that the Court instructed the jury that closing statements were not evidence. Mr. Paddison, Counsel for Mr. Kimbrough, further asserts that he did not talk about the substance of Vargas, Jr.'s statements and that it was entirely appropriate to reference the physical documents that the prosecutor's office had in its possession. Sergeant Guntzviller and Lieutenant Sullivan testified that Jacobs' recorded statements, written statements, photographs, diagrams, and reports comprised the "police jacket" that was given to the Wayne County Prosecutor's Office.

Defendants further argue that they submitted this information to remind the jury that a malicious prosecution claim fails if the jury finds that probable cause nevertheless existed based on other information. *Darrah v. City of Oak Park*, 255

F.3d 301, 312 (6th Cir. 2001). Given that the second element of the malicious prosecution claim jury instruction required "there was no probable cause for the criminal prosecution," the Court finds that Defendant's reference to the "police jacket," that witnesses previously testified about in Defendants case-in-chief, was appropriate.

The Court finds that the *City of Cleveland v. Peter Kiewit Sons' Co.* factors are not met. Defendants have provided adequate reasons to support the frequency of their comments regarding Vargas, Jr., and the comments themselves. Defendants have also established that their comments regarding Vargas, Jr. were not impermissible. As Defendants indicate, they did not reference the substance of Vargas, Jr.'s testimony and only conveyed that Vargas, Jr.'s testimony—along with Ms. Dotson's—was included in the complete portfolio of documents submitted to the prosecutor in Jacobs' criminal trial. The Court also agrees that Defendants' statements about Vargas, Jr. were not unfairly misleading to the jury because everything that Defendants said was supported by previous statements during Jacobs' preliminary examination, criminal trial, and prior depositions. After examining the "totality of the circumstances," it is apparent that Defendants' comments concerning Vargas, Jr. were appropriate and the Court's decision to allow them was within its proper scope of discretion.

### D. Testimony of Mary Gross

Jacobs argues that the Court improperly limited the scope of discussion during Ms. Mary Gross' testimony. Jacobs contends that he should have been permitted to inquire about Gross' previous conversations with Defendants' attorneys. During Jacobs' case-in-chief, he examined Ms. Mary Gross, a former Detroit Police Department Evidence Technician, who no longer works for the City of Detroit. Jacobs' counsel inquired whether Ms. Gross had met with Defense counsel prior to her testimony. Jacobs' counsel then inquired about the substance of Ms. Gross' communications with Defense counsel. Following written motions arguing whether Ms. Gross was protected by attorney-client privilege or the work product doctrine, the Court ruled on the record that she was protected by both privileges, and limited questions about her conversations with Defense counsel to whether she met with them, how long they talked, and when they met. [ECF No. 273]

Jacobs once again argues that Ms. Gross should not be protected by attorney-client privilege because she no longer works for the City of Detroit and that the City of Detroit is not a party to the lawsuit. Jacobs' further asserts that any protection Ms. Gross may receive from attorney-client privilege only extends to communications and not facts. Since Jacobs was not permitted to question Ms.

13

Gross about the substance of her conversations with Defense counsel, Jacobs argues that he could not adequately establish bias.

"Privileged communications between an employee and corporate counsel should not automatically lose their protected status upon the employee leaving the company." *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 305 (E.D. Mich. 2000). The party advocating for attorney-client privilege must establish that the witness' communications "differed in some relevant way from counsel's communications with any other third-party witness." *Id.* at 306.

Defendants analogize Ms. Gross' situation to *In re Allen.* 106 F.3d 582, 606 (4th Cir. 1997). *In re Allen* established that the attorney-client privilege applied to a former employee. *Id.* The Fourth Circuit concluded that 1) the former employee was an employee during the relevant time period and possessed information relevant to the investigation; 2) counsel interviewed the former employee at the direction of her client to provide legal advice; and 3) counsel needed information from the former employee to develop legal advice and strategy for her client. *Id.*

Similarly, *Peralta v. Cendant Corp.*, is also analogous. 190 F.R.D. 38 (D. Conn. 1999). In *Peralta*, the court found that conversations between a former employee and counsel were privileged. *Id.* at 41. The court reasoned that communications between a former employee and counsel are privileged "if the

14

nature and purpose" of the communications is "to learn facts related to plaintiff's termination that [former employee] was aware of as a result of her employment." *Id.* The Court looks to *Peralta* to further illustrate the attorney-client privilege for former employees:

> The distinction drawn by the Court between attorney-client privileged and non-privileged communications with former employees should not be difficult to apply if the essential point is kept in mind: did the communication relate to the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment? If so, such communication is protected from disclosure by defendant's attorney-client privilege under *Upjohn.* As to any communication between defendant's counsel and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously, no attorney-client privilege applies.

*Id.* at 41-42. Following this reasoning, Ms. Gross is protected because Ms. Gross was a former employee and the communication related to her "conduct and knowledge" during her employment with the City of Detroit.

Jacobs further argues that the work product doctrine is inapplicable because Ms. Gross is not a party to the suit, and the doctrine does not prevent underlying facts from being produced. Jacobs asserts that Defendants' attempt to invoke the work product doctrine "suggests that Defense Counsel created a script or memorandum outline for Ms. Gross to testify from." [ECF No. 277, Pg.ID 7827] Not only is this assertion unsupported, but it is incorrect. *In re Allen* ruled that counsel's notes and interview summary with a former employee were protected.

15

106 F.3d at 608. Although Jacobs is correct that the attorney-client privilege "does not protect disclosure of the underlying facts," Ms. Gross fully testified about her involvement with investigating 5837 Christiancy Street on the night in question. Asking Ms. Gross about the substance of her communications with defense counsel would be akin to asking, "what did you say or write to the attorney?" The Supreme Court disallowed such questions in *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981).

As for Jacobs' argument that Ms. Gross is not a party to the case nor is the City of Detroit, the Court is persuaded by Defendants' proffered case, *Coleman v. City of New York*, 1999 WL 493388, at *2 (S.D.N.Y. July 8, 1999). *Coleman* explains:

> [T]he Corporation Counsel's discussion with non-adverse City employees about their deposition in a case in which the City (or City agency) is a defendant is protected by the City's attorney-client and/or work-product privilege, regardless of whether the employee also asks for representation in connection with the deposition . . . .

*Id. Coleman* is analogous to the instant case because Kimbrough requested that the City of Detroit represent him. Ms. Gross—as a current or former employee of the city—is protected by the city's attorney-client privilege.

### E. Denial of Bill Cousins as Expert Rebuttal Witness

Jacobs argues that the Court erred in preventing Mr. Bill Cousins ("Cousins") from serving as an expert witness. Jacobs sought to introduce Cousins, a regular instructor of police procedure, to rebut Kimbrough and Alam's testimonies that it was appropriate to wear civilian clothing during the execution of an arrest warrant. Cousins' testimony was also sought to rebut Weinman's testimony that he did not violate protocol when he did not tell Jacobs that there were law enforcement agents in his home.

To support his argument, Jacobs relies on *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Jacobs argues that Cousins' testimony would have "assist[ed] the trier of fact in determining whether Defendants' conduct on the scene was objectively reasonable and consistent with the accepted standards of federal procedures, practices and training." [ECF No. 277, Pg.ID 7830] Jacobs further asserts that Cousins' testimony would have assisted the jury "to understand or determine a fact in issue." Fed. R. Evid. 702.

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

17

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

*Daubert v. Merrell Dow Pharms* assigns the district court judge a "gatekeeping" function. 509 U.S. 579, 597 (1993). The district court must ensure that the expert witness' testimony "both rests on a reliable foundation and is relevant to the task at hand." *Id.* The Court must "make an initial assessment of the relevance and reliability of the expert testimony." *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

The Court finds that Cousins' testimony is not relevant to contested facts and it would not have helped the jury determine a fact in issue. Cousins' testimony would have focused on what clothes Kimbrough and Alam were wearing. The only possible claim that Cousins' testimony could involve is Jacobs' excessive force claim. Defendants concede that Jacobs was shot by a bullet from Kimbrough's gun. The only fact at issue is whether Jacobs pointed his gun at the officers or not. To the extent that Jacobs may not have pointed

his weapon at the officers[3] if they were wearing more prominent clothing, both Kimbrough and Alam testified that they announced themselves and were wearing their official badges. Cousins' testimony would have been more likely to confuse the issues or mislead the jury than to assist the jury with determining whether Defendants used excessive force.

The Court also finds that Cousins' potential testimony concerning Weinman's decision not to alert Jacobs about the officers in his neighbor's residence would not have been permissible. As Defendants indicate, the reasonableness "of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Cousins' testimony would not have assisted the jury with determining reasonableness because he even acknowledges in his report that there are no "official guidelines or procedures" that would have governed Weinman's actions. [ECF No. 285-1, Pg.ID 8230] (quoting Bill Cousins' Expert Report).

### F. Cumulative Errors

Jacobs asserts that even if no single error would be sufficiently prejudicial to justify a new trial, the cumulative effect of the Court's errors warrants a new trial.

---

[3] Whether Jacobs pointed his gun at the officers was a disputed issue between the parties at trial and Jacobs maintains that he did not point his gun at Defendants Kimbrough and Alam.

Citing *United States v. Ashworth*, Jacobs contends that cumulative errors warrant a new trial if they were so severe as to deny the movant a fundamentally fair trial. 836 F.2d 260, 267 (6th Cir.1988).

For the reasons set forth above, the Court finds that all of the decisions that Jacobs contests were within the proper discretion of the Court. Since the Court finds that there were no errors, Jacobs' claim of cumulative error fails as a matter of law. *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc).

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Jacobs' Motion for a New Trial [#277] is **DENIED**.

s/Denise Page Hood
DENISE PAGE HOOD
DATED: June 9, 2020  Chief Judge